UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DEWAYNE THOMPSON,

Plaintiff,

v.

A. LOPEZ *et al.*,

Defendants.

Case No. 1:24-cv-00252-KES-EPG (PC)

FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM AGAINST DEFENDANTS LOPEZ AND ROCHA, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED

(ECF No. 13)

OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS

Plaintiff DeWayne Thompson is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on February 21, 2024. (ECF No. 1). Plaintiff alleges that Defendants, who are correctional officers at California State Prison Corcoran State Prison ("CSP-Corcoran"), retaliated against him for filing grievances, treated him differently because of his race, and improperly forced him to choose between outdoor yard time or mental health treatment.

On August 21, 2024, the Court screened Plaintiff's complaint and found that it stated a cognizable claim for retaliation under the First Amendment against Defendants Lopez and Rocha. (ECF No. 13 at 14). The Court also determined that the complaint did not state any other cognizable claims. (*Id.*) The Court provided Plaintiff with applicable legal standards,

explained why the complaint failed to state any cognizable claims, and gave Plaintiff thirty days to file a first amended complaint, notify the Court in writing that he wished to stand on his complaint, or notify the Court in writing that he did not wish to file an amended complaint and was instead willing to proceed on the First Amendment retaliation claim against Defendants Lopez and Rocha. (*Id.* at 14-15).

After receiving the Court's screening order, Plaintiff filed a notice on September 3, 2024, that he wanted to stand on his complaint. (ECF No. 14). For the reasons set forth below, the Court recommends that this action proceed on Plaintiff's claim for retaliation under the First Amendment against Defendants Lopez and Rocha, and that all other claims and defendants be dismissed. Plaintiff has thirty days from the date of service of these findings and recommendations to file his objections.

**I. SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677,

681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff's complaint (ECF No. 1) alleges three claims, summarized[1] as follows:

Plaintiff's first claim is for violation of "freedom of expression." Plaintiff alleges that he was the victim of retaliation by Defendants A. Lopez and J. Rocha while housed at CSP-Corcoran Ad-Seg (presumably Administrative Segregation) because Lopez and Rocha searched his cell, confiscated his radio and personal items, and exaggerated a rule violation report.

Plaintiff was confined in Ad-Seg from June 30, 2022, to December 20, 2022. On August 26, 2022, Lopez and Rocha "ascribed to him submitting grievances" along with hunger striking and "forewarning in his venting of lawsuit," due to them depriving Plaintiff of outside exercise.

At some time, Lopez was Plaintiff's staff assistant, who was supposed to meet with Plaintiff 24 hours before a disciplinary hearing to help Plaintiff prepare. However, Plaintiff states Lopez never did so. Instead, Plaintiff alleges that Lopez lied to Plaintiff about not being his staff assistant, despite Plaintiff trying to learn who his staff assistant was. Plaintiff further alleges that Lopez falsely claimed he had met with Plaintiff 24 hours before the hearing.

This led Plaintiff to "adamantly forewarn in his venting to Lopez of inevitably writing him up and suing him." Lopez responded that, "if he does he will write him up for threatening staff." Plaintiff grieved Lopez's misconduct due process violation. Plaintiff was then granted a reissue and rehearing.

Subsequently, Plaintiff states that Lopez and Rocha conducted a punitive cell search only on Plaintiff's cell, under the pretense of a random cell search. Plaintiff states that Lopez

---

[1] Portions of the recitation of Plaintiff's complaint have been edited for clarity and punctuation.

and Rocha conducted the search while Plaintiff was out of his cell for a mental crisis and anxiety attack. Plaintiff alleges that Lopez told him that, "him and Rocha searched Plaintiff's cell for his and their protection since Plaintiff liked to file grievances and lawsuits."

Plaintiff further alleges that Lopez exaggerated an RVR by charging Plaintiff with being in possession of a deadly weapon, but the alleged weapon was a legitimate, non-altered, non-weaponized disposable razor with guard, and was issued to Plaintiff by an official during shower time.

On September 2, 2022, Plaintiff indicates that Rocha conducted another punitive cell search and confiscated a state-issued radio, which resulted in the State Personal Board sanctioning Plaintiff.

Additionally, Plaintiff states that on August 26, 2022, Officer Andrade told Plaintiff that the small management yard and walk along yard list was done, which meant that Plaintiff would not have an opportunity for yard that day. Because the day was Friday, this meant Plaintiff would not have yard until Monday. Plaintiff indicates that the yard schedule was for Monday, Wednesday, and Friday without make up, despite make up yard being designated for Sunday. Due to yard deprivation, Plaintiff states that he began to suffer from mental anguish that compelled him to alert staff of suicidal ideations, including thoughts of self-injurious behavior. Again, Plaintiff "forewarned of redressing Constitutional violation via grievance and judicial system." Plaintiff adds, "[i]n the midst thereof," Lopez, with Rocha in tow, exaggerated safety and security, and targeted Plaintiff's cell with a punitive cell search.

Plaintiff states that during this search, Defendants (presumably Lopez and Rocha) unnecessarily vandalized Plaintiff's cell. Plaintiff alleges that his legal material was disorganized, and Plaintiff's breakfast and lunch were disposed of. Because Plaintiff was intermittently fasting, Plaintiff had been saving his lunch, which was served in his cell. This left Plaintiff very hungry. Lopez and Rocha allegedly laughed at Plaintiff after he asked for lunch. Plaintiff states that Lopez and Rocha also took the coaxial cable for Plaintiff's television, preventing Plaintiff from watching television, and confiscated Plaintiff's disposable shaving

razor, which was commonly available to inmates in and out of Ad-Seg unless altered as a weapon.

Plaintiff states that Lopez and Rocha subsequently filed an exaggerated RVR against him for possession of a deadly weapon. The infraction was referred to the district attorney for felony prosecution. Plaintiff was retained in punitive segregation for an extended five months and 17 days. The RVR is still pending, and Plaintiff states that officials refused to hear the RVR.

Plaintiff further alleges that Lopez confiscated prescribed Tylenol medication from Plaintiff's cell and told Plaintiff that he was contemplating writing Plaintiff up for hoarding medication.

Thus, Plaintiff alleges that there is a causal connection between the punitive cell search and exaggerated deadly weapon RVR and Plaintiff exercising his protected First Amendment rights.

On September 2, 2022, between 0900 and 1230 hours, while Plaintiff was attending structured group therapy for his mental health treatment, Plaintiff states that Rocha conducted another punitive cell search, within a week of the previous one on August 26, 2022. Plaintiff states that during this search, Rocha confiscated a state issued radio that another officer had provided Plaintiff for entertainment after Defendants confiscated the coaxial cable to Plaintiff's television. Plaintiff states that Rocha left no cell search receipt, in violation of the rules, and Rocha then denied that he did it. Plaintiff indicates that Defendant E. Olivias confirmed that Rocha was the officer who entered Plaintiff's cell and confiscated the radio. Rocha was then sanctioned by the State Personal Board for misconduct.

Plaintiff also discovered that a state razor in his cell had been confiscated. Plaintiff alleges that Lopez planted the razor in Plaintiff's cell due to Plaintiff's exercise of his constitutional rights.

Plaintiff's next claim is for violation of the right to equal protection under the Fourteenth Amendment. Plaintiff claims that, in the alternative, he was treated differently by Defendants Lopez and Rocha while he was in Ad-Seg from June 30, 2022, to December 20,

2022, because he was African American. He alleges that the motivational force for the cell searches and RVR violation was Plaintiff's race.

Plaintiff alleges that he was treated differently than similarly situated Hispanic inmates. Plaintiff repeats his allegations that Defendants Lopez and Rocha conducted a cell search, confiscated personal and legal items as well as a coaxial cable to his television, and threw away his state breakfast and lunch that he was saving for later due to intermittent fasting. Additionally, Plaintiff states that Lopez drafted an exaggerated RVR of Plaintiff possessing a deadly weapon based on him having an allowable commonly used unaltered state disposable razor with guard. Plaintiff further states that Rocha also searched his cell on September 2, 2022, anonymously and without leaving a cell search receipt. Rocha confiscated a state issued radio that another officer had given to him after he could no longer watch television. After the search, Plaintiff discovered a state razor in his cell, after Lopez had confiscated another one.

Plaintiff alleges that Defendants [presumably Lopez and Rocha] demonstrated preferential treatment towards Hispanic inmates, such as Dominguez, Flores, and Alberto Cardero. Plaintiff alleges that Defendants did not search the cells of these inmates or issue RVRs, despite having reasonable and just cause to do so. Plaintiff states that Dominguez, Flores, and Cardero are known dangerous inmates who possess knives and dangerous contraband. Plaintiff indicates that he told Lopez and Rocha that Dominguez, Flores and Cardero had state razors and knives, and that Plaintiff could hear them being sharpened when he was their neighbor. As an example, Plaintiff states that on September 2, 2022, Dominguez and Flores were Plaintiff's neighbors at CSP-Corcoran. Dominguez and Flores were in cell 201 and Plaintiff was in cell 202. Plaintiff states that he, as well as Lopez and Rocha, witnessed Dominguez and Flores shatter the front window of their cell. Plaintiff states that Defendants laughed and joked about it with Dominguez and Flores but did not write them up. Nor, Plaintiff states, did Defendants search the cell, despite Dominguez and Flores vacating it for group therapy and leaving the door open for easy access. In contrast, Plaintiff states that this was what Rocha did to Plaintiff's cell when Rocha surreptitiously confiscated Plaintiff's state issued

radio. Plaintiff alleges he was treated differently because he is African American and a member of a protected class.

Plaintiff further states that he could hear Lopez trump up an excuse and alibi to avoid drafting Dominguez and Flores an RVR for destruction of state property. Plaintiff heard Lopez tell Dominguez and Flores that they were not going to get an RVR because they[2] wanted to see Flores go home since he was set to be released in thirty days. Plaintiff also heard Lopez state that he did not want their canteen money and that accidents happen, but if it happened again, they would get an RVR. After Plaintiff witnessed this treatment, Plaintiff blurted out of his cell door: “You racist!”

Plaintiff’s third claim is for deliberate indifference to outdoor exercise and interference with mental health treatment. Plaintiff alleges that Defendants Olivias and Roqua made Plaintiff choose between outdoor exercise and structured group therapy by scheduling them to overlap. This resulted in Plaintiff receiving no more than 3.5 hours of outdoor exercise out of his allotted 10 hours from July 2022 until December 2022. Plaintiff indicates that Defendants Olivias and Roqua reported that Plaintiff was allotted 10 hours per week, even though all but 3.5 hours conflicted with his mental health structured therapy sessions. Plaintiff states that Defendants were responsible for yard access and the yard schedule, and that there was no rational basis for yard time and group therapy to overlap when they could have been staggered. Plaintiff states that Defendants also refused to allow make up yard on Sundays but allowed leisure for the yard officers without accommodating Plaintiff’s conflicting schedule.

Plaintiff states that Defendants observed Plaintiff decomposing due to the yard schedule, and that Plaintiff was compelled to go on a hunger strike. Plaintiff lost about 15 pounds, and Defendants monitored Plaintiff’s hunger strike and responded to his mental crisis due to yard deprivation.

---

[2] It is unclear whether “they” is meant to refer to Defendants Lopez and Rocha, or Lopez and other individuals.

Plaintiff states that in their defense, Defendants believed that so long as they provided Plaintiff an opportunity to his allotted 10 hours of yard during the weekdays, despite it overlapping with group therapy, they had fulfilled their official obligations to Plaintiff.

Plaintiff states that after he gained too much weight, which made him feel sluggish and symptomatic of hypertension, he decided to forgo group therapy to take advantage of his allotted hours of exercise time.

Additionally, Plaintiff states that his cell was very small and congested with the bunk, sink, toilet, desk, and shelves, and that it was sweltering, thwarting Plaintiff's ability to exercise in his cell.

Plaintiff states that Sergeant Silva did the exercise yard time audit report on Sunday and answered Plaintiff's grievance. Nevertheless, Plaintiff states that Silva believed that Plaintiff had received his allotted 10 hours of yard time per week due to Defendants' deception.

Plaintiff names as defendants A. Lopez, correctional officer at CSP-Corcoran; J. Rocha, correctional officer at CSP-Corcoran; E. Olivias, correctional sergeant at CSP-Corcoran; R. Roqua, correctional lieutenant at CSP-Corcoran.

## III. ANALYSIS OF PLAINTIFF'S CLAIMS

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 695 (1978).

**B. Retaliation in Violation of the First Amendment**

Plaintiff's first claim is for retaliation. Allegations of retaliation against a prisoner's First Amendment rights may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance

a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted); *accord Watson v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

"'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm,' *Brodheim*, 584 F.3d at 1269, that is 'more than minimal,' *Robinson*, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. *Id.* at 569." *Watson v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration in original).

While prisoners have no freestanding right to a prison grievance process, *see Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. *Rhodes*, 408 F.3d at 567.

Plaintiff alleges that Defendants Lopez and Rocha retaliated against him for exercising his First Amendment rights by conducting two cell searches, during which a radio and personal item were confiscated, and by exaggerating a rule violation report by charging him with possession of a deadly weapon that was in fact a non-altered disposable shaving razor with a guard.

Plaintiff claims Lopez and Rocha retaliated against Plaintiff because Lopez lied to Plaintiff about being his staff assistance in connection with an RVR. This "incited Plaintiff to adamantly forewarn in his venting to Lopez of inevitably writing him up and suing him." Plaintiff alleges that Lopez responded that he would write Plaintiff up for threatening staff. Plaintiff then filed a grievance against Lopez, resulting in a reissue and rehearing of the RVR.

Liberally construing the allegations and assuming these actions are adverse, the Court looks to whether Plaintiff has alleged facts that sufficiently establish a causal connection

between the protected conduct, i.e., filing a grievance against Defendant Lopez, and the adverse actions.

The only explicit fact that Plaintiff alleges connecting these two is Lopez's alleged statement, "That since he liked to file grievances and lawsuits, they searched his cell for their and his protection." (ECF No. 1, at p. 7). Based on this allegation, the Court finds that Plaintiff's complaint states a cognizable claim for retaliation in violation of the First Amendment against Defendants Lopez and Rocha based on the two cell searches and confiscation of property during those searches.

However, the Court finds that Plaintiff's complaint fails to allege sufficient facts to state a claim for retaliation as to any other incidents, including exaggerating a rule violation report by charging Plaintiff with possession of a deadly weapon that was in fact a non-altered disposable shaving razor with a guard. There are no statements tying the RVR to any protected conduct and the mere fact that it took place after the filing of a grievance is not sufficient to state a claim for retaliation.

**C. Equal Protection Under the Fourteenth Amendment**

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state an equal protection claim, a plaintiff must allege facts plausibly showing that "the defendants acted with an intent to purpose to discriminate against [him] based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (internal quotation marks and citation omitted). Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g.*, *City of Cleburne*, 473 U.S. at 440.

Plaintiff alleges that the same adverse actions, i.e., the two cell searches, confiscation of property, and RVR, were done by Lopez and Rocha because Plaintiff is African American. He alleges that two other inmates, who are Hispanic, were not treated similarly.

The Court finds that Plaintiff fails to allege a cognizable claim for Equal Protection. Plaintiff does not allege any facts explicitly connecting these actions against Plaintiff to his race, such as anything that Lopez or Rocha said. Moreover, Plaintiff alleges that Lopez explained that he refused to give an RVR to Dominguez and Flores because Flores was due to be released in 30 days, rather than because they were Hispanic.

**D. Outdoor Exercise**

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

When challenging conditions of confinement, a plaintiff must make two showings. *Id.* First, the plaintiff must make an "objective" showing that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, the plaintiff must make a "subjective" showing that the prison official acted "with a sufficiently culpable state of mind." *Id.*

When determining whether the conditions of confinement meet the objective showing, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981). "[T]he deprivation alleged must be, objectively, sufficiently serious" and "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Seiter*, 501

U.S. at 305 (noting that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise").

When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

"[E]xercise is one of the basic human necessities protected by the Eighth Amendment." *Norbert v. City and Cnty. of San Francisco*, 10 F.4th 918, 928–29 (9th Cir. 2021) (quotation marks omitted) (quoting *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997), *LeMarie v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993)). But the Ninth Circuit has not gone so far as to conclude that "all deprivations of outdoor exercise are per se unconstitutional." *Id.* at 929. Rather, "the Constitution requires jail officials to provide outdoor recreation opportunities, or otherwise meaningful recreation, to prison inmates." *Id.* (emphasis omitted) (quoting *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018)). The lack of meaningful opportunity to exercise combined with other factors can create degrading and dehumanizing conditions. For example, the Ninth Circuit found that the several factors in *Spain v. Procunier* combined to make an unconstitutional condition of confinement. 600 F.2d 189, 199 (9th Cir. 1979). The prisoners in *Spain* were held "in continuous segregation, spending virtually 24 hours every day in their cells with only meager out-of-cell movements and corridor exercise. And their contact with other persons was minimal." *Id.* at 199.

The Court finds that Plaintiff fails to state a cognizable constitutional claim based on a lack of outdoor exercise. First, Plaintiff concedes that Defendants Olivias and Roqua believed that they were complying with their requirements by allocating 10 hours of outdoor exercise to Plaintiff, even if some of those hours conflicted with his mental health treatment. (ECF No. 1, at pp. 12-13) ("In their Defense, Defendants believed so long as they provided Plaintiff an opportunity to his allotted 10 hours of exercise yard during aforementioned weekdays, despite it overlapping with group therapy, the causal connection to yard being deducted to 3.5 hours

per week, they fulfilled their official obligations . . . ."). Plaintiff thus cannot meet the element of subjective intent for such a constitutional claim.

Moreover, Plaintiff was given an opportunity to exercise for 10 hours per week, as he decided to do so after he gained weight. He also was able to have exercise time for 3.5 hours per week even with the scheduling conflict. Under these circumstances, the Court finds that Plaintiff has not alleged a sufficiently serious objective limitation to constitute a constitutional violation.

**IV. CONCLUSION AND ORDER**

For the foregoing reasons, it is **RECOMMENDED** that:

1. This case proceed on Plaintiff's First Amendment retaliation claim against Defendants Lopez and Rocha; and
2. All other claims and defendants be dismissed.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 4, 2024**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE